## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

THOMAS R. PRINCE,                                    Case No. 1:20-cv-652

        Plaintiff,                                  Cole, J.
                                                     Bowman, M.J.

    v.

SCIOTO COUNTY COMMON PLEAS COURT, et al.,

        Defendants.

## REPORT AND RECOMMENDATION

Plaintiff initiated a pro se prisoner civil rights complaint in this Court on or about October 16, 2020. In his complaint, Plaintiff sought monetary damages for multiple claims against the Scioto County Common Pleas Court, the Scioto County Sheriff's Department, the prosecutors and defense attorney in his case, as well as Scioto County Sheriff's office employees Grooms, Wynn, and Carter. In a previous Report and Recommendation ("R&R") filed October 16, 2020,[1] the undersigned recommended the dismissal of all claims except for Plaintiff's deliberate indifference claims against Defendants Grooms, Wynn, and Carter in their individual capacities. The remaining Defendants now seek summary judgment.[2] For the reasons discussed, Defendants' motion should be GRANTED.

---

[1]The referenced R&R remains pending before Judge Cole.
[2]Defendants filed their motion on October 15, 2021. (Doc. 41). When Plaintiff failed to file any timely response in opposition to that motion, the Court directed Plaintiff to "show cause" why the motion should not be granted. (Doc. 42). On December 13, 2021, Plaintiff filed a response to the "show cause" order, asserting that he "did not know that he was required to object" to the Defendant's motion, and that he had been recently released from imprisonment. (Doc. 44).

## I.    Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the non-moving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted).  "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted).  "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348 (1986).  "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).  In order to survive summary judgment, the non-moving party must present probative evidence that supports its complaint.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986).  The non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  The court determines whether the evidence requires submission to a jury, or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

2

Although reasonable inferences must be drawn in favor of the opposing party, *see id.* at 255, he must present significant probative evidence tending to support the complaint. *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575 (1968). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In other words, the mere existence of a scintilla of evidence to support the nonmoving party's position will be insufficient to defeat a well-supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

## II. Findings of Fact

Consistent with the above standard of review, the undersigned has drawn all reasonable factual inferences in Plaintiff's favor. In support of the facts asserted, Defendants have filed affidavits as well as related incident reports and medical records. In his response in opposition to Defendants' motion, Plaintiff has filed copies of several grievances and a handful of additional records. However, none of Plaintiff's evidence suggests that any genuine issue of material fact remains for trial.

A central allegation in the complaint is that Plaintiff notified all three Defendants of his serious medical need (a broken right foot) but that each Defendant prevented Plaintiff from receiving medical treatment for that injury. Plaintiff also generally alleged that jail officials denied him an x-ray and that he did not receive any treatment until a month following his injury, following his transfer to a state institution. On summary judgment, Defendants' evidence flatly contradicts those central allegations and Plaintiff has failed to

submit any contrary evidence.  Therefore, it is undisputed that: (1) No Defendant prevented Plaintiff from obtaining treatment for his foot; (2) Plaintiff's right foot was x-rayed less than 72 hours after his first complaint of injury; and (3) the x-ray revealed no acute fracture.

Plaintiff concedes that the first notice of injury that any of the three Defendants received of his injury was at approximately 12:10 a.m. on January 1, 2020, when Defendant Grooms was notified of his injury by the jail's central control.  (*See* Doc. 44 at 4, PageID 530). Responding, Defendant Grooms observed Plaintiff lying on the floor. (Doc. 41-2, Declaration at ¶¶ 5-6).  Defendant asked Plaintiff to remove his sock and observed scars on Plaintiff's toes, which Plaintiff advised were from a prior injury.  (*Id*. at ¶ 8).  Defendant Grooms did not observe swelling and advised Plaintiff to submit a request for medical care through the jail's normal system so that a nurse could evaluate him in the morning.  Defendant Grooms then provided Plaintiff with ice and ibuprofen and advised him to stay off his foot pending further medical evaluation.  (*Id*. at ¶10-12).  When Plaintiff requested more ibuprofen at 3:00 a.m., Defendant Grooms instructed another officer to provide it. (*Id*. at ¶ 13).  Defendant Grooms went off duty at 7:00 a.m. on January 1, 2020 and had no further contact with Plaintiff regarding his right foot.  (*Id*.; s*ee also* Docs. 41-2 at 3-4, PageID 492-493).

The next day, around 4:30 p.m., Plaintiff verbally complained to Defendant Wynn that his toes were injured and that he had not been treated.  That verbal complaint was the first notice that Defendant Wynn was provided of Plaintiff's foot injury.  (Doc. 41-3 at ¶ 5, PageID 494).  Defendant Wynn responded by checking in with medical staff, who stated that an x-ray had been ordered.  (*Id.* at ¶ 7).  Defendant Wynn relayed that

4

information to Plaintiff and asked Plaintiff if he needed ice or ibuprofen.  (*Id.* at ¶ 9).

Plaintiff declined, stating "that ice made his foot hurt worse and ibuprofen causes him to

vomit."  (*Id.* at ¶9; *see also* Doc. 44 at 9, PageID 535).

Close in time to his interaction with Defendant Wynn, at 4:32 p.m. on January 2,

Plaintiff filed a grievance with Defendant Carter that similarly complained that he had not

yet been transported to the hospital for his injury.  (Doc. 44 at 10, PageID 536).  At 11:03

a.m. on January 3, 2020, Captain Carter (who was Wynn's supervisor) responded that he

had learned of the issue late the previous day, and had ordered "an x-ray of your foot to

be taken before the end of business today."  (*Id.*)  Consistent with that order, Plaintiff was

transported to King's Daughters Medical Center Urgent Care in the early afternoon of

January 3, 2020.  Upon his arrival, he was observed to be in no acute distress.  (*See* Doc.

41-4 at 11, PageID 509).

The examining physician recorded Plaintiff's reported history of previous broken

toes in his right foot. (Doc. 41-4 at 11, PageID 509).  The x-ray confirmed that history.

Specifically, the x-ray revealed "postoperative changes in the foot from probable prior

osteotomies and resections of the middle phalanges of the third and fourth digits and

possible osteotomy of the head of the fifth metatarsal," as well as arthritis, a moderate

size bunion, and "a small loose body along the medial first metatarsal phalangeal joint."

(Doc. 31-4 at 13, PageID 511).  Notwithstanding the historical evidence, the x-ray showed

"no evidence of acute fracture."  (*Id.*)  Therefore, Plaintiff was sent back to the jail with a

recommended plan to "consider repeat x-rays or bone scan" if pain persisted over time,

and to use "NSAID's for pain control." (Doc. 41-4 at 13, PageID 511).  Plaintiff's discharge

instructions included a prescription for Mobic, an NSAID, "as needed for Pain." (Doc. 41-4 at 18, PageID 516);

After his return to the jail, Plaintiff was provided crutches pursuant to a nurse's directive.  (Doc. 41-3 at ¶ 11, PageID 495).  He was then transferred to the medical pod in accordance with jail policy that, due to the danger of crutches being used as a weapon, inmates using crutches are to be housed in the medical pod. (*Id*. at ¶¶ 12-13).  Plaintiff was unhappy about his transfer to the medical pod and filed grievances concerning that transfer.  However, those grievances do not relate to the "deliberate indifference" claims presented against the three Defendants herein, insofar as Plaintiff does not complain of the individual Defendants' actions with respect to his medical treatment after the lack of fracture was confirmed through x-ray.

### III.    Analysis

### A.  The Deliberate Indifference Standard

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Sigley v. City of Parma Hts*., 437 F.3d 527, 533 (6th Cir.2006) (citing *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)).  Upon initial screening, this Court construed Plaintiff's complaint as alleging that the three Defendants exhibited deliberate indifference to his serious medical need in violation of the Eighth Amendment prohibition against "cruel and unusual punishments." U.S. Const. amend. VIII; *see also Farmer v. Brennan*, 511 U.S. 825, 828 S.Ct. 1970 (1994).  On further review, it is unclear whether Plaintiff had already been convicted of a crime at the

time of the incident, or whether he was a pretrial detainee while being housed at the jail between December 31, 2019 and January 3, 2020. That distinction can make a difference, insofar as a different "deliberate indifference" standard applies to pretrial detainees under the Due Process Clause of the Fourteenth Amendment than the "deliberate indifference" standard that applies to prisoners who proceed under the Eighth Amendment.

Whereas the Eighth Amendment requires proof of both a subjective and an objective component, in *Brawner v. Scott County, Tennessee*, 14 F.4th 585 (6th Cir. 2021), the Sixth Circuit recently held that a pretrial detainee may prove his or her deliberate indifference claim by satisfying the objective component alone. *Brawner* re-examined precedent in light of *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), in which the Supreme Court held that pretrial detainees may prove an excessive force claim by satisfying an objective component alone. *Brawner* concluded that *Kingsley* should be extended to "deliberate indifference" claims brought by pretrial detainees. Setting aside precedent, the appellate court offered this explanation of the new "civil" deliberate indifference standard now applicable to claims filed by pretrial detainees:

> Mere negligence is insufficient. A defendant must have not only acted deliberately (not accidentally), but also recklessly "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer*, 511 U.S. at 836, 114 S.Ct. 1970 (describing, and rejecting as inapplicable to Eighth Amendment deliberate-indifference claims, the civil standard for recklessness). A pretrial detainee must prove "more than negligence but less than subjective intent - something akin to reckless disregard." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc); *see Darnell*, 849 F.3d at 35 ("[T]he pretrial detainee must prove that the defendant-official acted [or failed to act] intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."); *Griffith*, 975

> F.3d at 589 (Clay, J., concurring in part and dissenting in part) (explaining that a pretrial detainee must prove that the defendant acted "intentionally to ignore [her] serious medical need or recklessly failed to act with reasonable care to mitigate the risk that the serious medical need posed to the pretrial detainee, even though a reasonable official in the defendant's position would have known, or should have known, that the serious medical need posed an excessive risk to the pretrial detainee's health or safety").

*Id.*, 14 F.4th at 596–97. Summing up, *Brawner* held that in order to show a constitutional denial of adequate medical care as a pretrial detainee, "Brawner needed to present evidence from which a reasonable jury could find (1) that she had an objectively serious medical need; and (2) that Nurse Massengale's action (or lack of action) was intentional (not accidental) and she either (a) acted intentionally to ignore Brawner's serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to Brawner, even though a reasonable official in Nurse Massengale's position would have known that the serious medical need posed an excessive risk to Brawner's health or safety." *Id.*, 14 F.4th at 597.

## B. The Qualified Immunity Standard

In the case at hand, all three Defendants assert that they are entitled to qualified immunity on claims brought against them in their individual capacities. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz,* 533 U.S. 194, 200-201, 121 S.Ct. 2151 (2001). The doctrine is intended to balance the following competing interests: "the

8

need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009).

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092 (1986)). *See also Dorsey v. Barber,* 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson,* 555 U.S. at 231. "To overcome a defendant's assertion of qualified immunity, a plaintiff must show both (1) that the defendant violated a constitutional right, and (2) that the right was clearly established at the time of the violation." *Downard for Estate of Downard v. Martin*, 968 F.3d 594, 599-600 (6th Cir. 2020) (citing *Pearson*, 555 U.S. at 231-32).

### C. Application of Law to Undisputed Facts

Each Defendant's "liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir.2010). To prove his claim, Plaintiff must present evidence from which a reasonable jury could find that *each* Defendant had notice of his medical need and took some action that "was intentional (not accidental)" and "either (a) acted intentionally to ignore [the] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [Plaintiff], even though a reasonable official… would have known that the serious medical need posed an excessive risk to [Plaintiff's] health or safety." *Brawner*, 14 F.4th at 597.

9

On the record presented, the evidence unequivocally demonstrates that the individuals' actions were reasonable, while Plaintiff has utterly failed to present evidence that could overcome their assertions of qualified immunity. Even if a reviewing court were to decide that issue differently, any such right was not clearly established at the time of the alleged violation. This is true even if this Court considers the new deliberate indifference standard applicable in the Sixth Circuit under the Due Process Clause. In short, no genuine issues of material fact remain and Defendants are entitled to judgment as a matter of law even if the lower standard applies.

**Defendant Grooms**

Defendant Grooms was the first to learn of Plaintiff's injury on January 1. Defendant Grooms took reasonable action to assess the injury by asking Plaintiff to remove his sock, visually examining the foot, and questioning Plaintiff about the visible scars on his toes. Defendant Grooms did not ignore the injury, but acted reasonably in assessing the injury as not requiring more immediate medical attention than the ice and ibuprofen that he provided to Plaintiff, given the absence of any visible swelling at that time. He counseled Plaintiff to stay off of his foot as much as possible and to request a medical appointment later that same day, which Plaintiff did. It is undisputed that Grooms had no further part in the care of Plaintiff's foot injury. Objectively, Grooms acted reasonably and his conduct absolves him from any liability.

**Defendant Wynn**

On January 2, Plaintiff notified Defendant Wynn of his injury and of his dissatisfaction with the response to his request for medical attention. Like Grooms, Wynn did not deny care or ignore Plaintiff's complaint. Instead, he responded reasonably by

10

inquiring about the status of Plaintiff's medical request and writing up two incident reports. He also offered Plaintiff ice and ibuprofen, which Plaintiff refused. Medical staff informed Wynn that Plaintiff was scheduled to receive an x-ray.  Defendant Wynn reasonably relied upon that information, which he promptly relayed to Plaintiff. "[N]onmedical jail personnel are entitled to reasonably rely on the assessments made by the medical staff" and do not expose themselves to claims of deliberate indifference if they do.  *Winkler v. Madison Cty.*, 893 F.3d 877, 895 (6th Cir. 2018); *McGaw v. Sevier Cnty., Tenn.*, 715 Fed. Appx. 495, 498-99 (6th Cir. 2017) (when "an officer responds to a substantial risk of serious harm by asking for and following the advice of a professional the officer believes to be capable of assessing and addressing that risk, then the officer commits no act of deliberate indifference in adhering to that advice").

**Defendant Carter**

Defendant Carter learned of Plaintiff's request for an x-ray around the same time frame as Wynn, at approximately 4:30 p.m. on January 2, through the submission of Plaintiff's written grievance.  Defendant Carter responded to the grievance within 24 hours, directing medical staff to ensure that Plaintiff was transported for an x-ray on January 3.  Plaintiff was in fact transported to urgent care for an x-ray at approximately 1:30 p.m. on January 3.  Defendant Carter's actions also were objectively reasonable and do not support a constitutional claim.

**The Lack of Serious Medical Need and/or Injury**

Defendants additionally argue that Plaintiff had no objectively serious medical need for treatment following the negative x-ray results and his return from urgent care. While case law appears to support Defendants' position, it is unnecessary to reach that

issue given that none of the three Defendants is alleged to have taken any action or inaction relating to the medical treatment for Plaintiff's injury following his transfer to the medical pod with crutches.

As stated, the only "deliberate indifference" alleged against Defendants appears to be related to Plaintiff's initial allegations that he was denied any treatment at all and was denied an x-ray of his "broken" foot for more than a month - allegations that have been disproven by the record presented.  Plaintiff's foot was not broken, and he alleges no harm that resulted from any brief "delay" in obtaining the x-ray.  In any event, no clearly established case law suggests that the 2-3 day delay between notice of a potential fracture (12:10 a.m. on January 1), and transport for an x-ray at a nearby urgent care facility (approximately 1:30 p.m. on January 3) is so objectively "unreasonable" that it could constitute a constitutional violation.  *See, e.g., Loukas v. Gundy*, 70 Fed. Appx. 245 (6th Cir. 2003) (Prison physician's failure to diagnosis inmate's broken ankle for 24 days did not amount to deliberate indifference to inmate's serious medical needs under the Eighth Amendment, even though inmate suffered some discomfort before proper diagnosis was made, where break was not serious, and inmate did not suffer any detrimental effect from delay).

### IV.    Conclusion and Recommendation

For the reasons discussed above, **IT IS RECOMMENDED THAT:** Defendants' motion for summary judgment **(Doc. 41) be GRANTED** on all claims asserted.


 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

THOMAS R. PRINCE,                                        Case No. 1:20-cv-652

       Plaintiff,                                          Cole, J.
                                                Bowman, M.J.

   v.

SCIOTO COUNTY COMMON PLEAS COURT, et al.,

       Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).